IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ISAIAH SHOWELL | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB-10-03477 |
| BOARD OF EDUCATION OF, | * | |
| WICOMICO COUNTY, *et al.* | * | |
| Defendants. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Isaiah Showell, Sr. ("Plaintiff" or "Showell") proceeding *pro se*, has brought this action against Defendants Wicomico County Board of Education ("the Board" or "the Board of Education"), its Board Members, the Superintendent, John Fredericksen, Ph.D. ("Fredericksen or "Superintendent"), the Director of Human Resources, Stephanie Moses ("Ms. Moses"), the Supervisor of Mathematics, Anne Ashe ("Ms. Ashe"), and Principal Michael C. Johnson, Ph.D., ("Principal Johnson") of the Bennett Middle School (collectively "Individually-Named Defendants"). Plaintiff's Complaint alleges twenty-two (22) counts against the Defendants for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981 as well as Maryland law. Counts I to III and XV allege discriminatory discharge and retaliation in violation of Title VII. Counts IV to XI and Counts XVI to XX allege retaliation, discrimination, hostile work environment, constructive discharge, failure to promote and refusal to transfer in violation of 42 U.S.C. § 1981. Finally, Counts XII to XIV and XXI to XXII allege intentional infliction of emotional distress, contract violations, negligence,

defamation of character and tortious interference with prospective advantage in violation of Maryland law.

Pending before this Court are Defendant the Board of Education and the Individually-Named Defendants' Motions to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (ECF Nos. 9 & 13). Also pending before this Court are Plaintiff's Motions for Extension of Time (ECF Nos. 15 & 17). Additionally, Plaintiff filed Paper No. 16 in which he moves this Court to (1) Stay Defendants' Motions to Dismiss, (2) Appoint Counsel and (3) for an Extension of Time to Secure *Pro Bono* Counsel and Obtain Monetary Resources for Legal Representation (ECF No. 16).

The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendant the Board of Education's Motion to Dismiss (ECF No. 9) is GRANTED. The Individually-Named Defendants' Motion to Dismiss (ECF No. 13) is GRANTED. Plaintiff's Motions for Extension of Time (ECF Nos. 15 & 17) are DENIED. Plaintiff's Motion to (1) Stay Defendants' Motions to Dismiss, (2) Appoint Counsel and (3) for an Extension of Time to Secure *Pro Bono* Counsel and Obtain Monetary Resources for Legal Representation (ECF No. 16) is DENIED.

## BACKGROUND

In ruling on a motion to dismiss, the factual allegations in the plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Moreover, a *pro se* litigant's complaint should not be dismissed unless it appears beyond doubt that the litigant can prove no set of facts in support of his claim that would entitle him to relief. *Goron v. Leeke*, 574 F.2d 11447, 1151 (4th Cir. 1978).

Showell is an African American male who resides in Wicomico County.  Pl.'s Compl.¶ 1, ECF No. 1.  The Complaint states that he was employed as a Math Teacher by the Wicomico County Board of Education from August 2005 to June 2009, although he was removed from school grounds on April 2009.  *Id.*  This employment discrimination and wrongful termination action, filed on December 10, 2010, arises out of alleged events which occurred during and after Plaintiff's assignment to the Bennett Middle School ("BMS") for the 2007-2008 and 2008-2009 academic years.  *Id.* at ¶¶ 14-15, 36.

In the Complaint, Showell indicates that prior to his transfer to the BMS, he worked at the W.A.L.C.[1] from 2005 to 2007 and received satisfactory evaluations from Ashe and the W.A.L.C. Principal, Mr. Humphree.  *Id.* at ¶¶ 11-14.  During an interview at the BMS, before the start of the 2007-2008 academic year, Showell contends that Principal Johnson informed him that he would teach 8th Grade Algebra.  *Id.* at ¶ 15.  On the first day, however, Showell states that he was abruptly assigned, without any explanation or training, to the 6th Grade Math Intervention class with another teacher.  *Id.* at ¶¶ 16-18.  He further states that a Caucasian first year teacher, without any experience, Mr. Kevin Johnson, replaced him as the 8th Grade Algebra teacher.  *Id.* at ¶ 17.  He also contends that his schedule was abruptly changed often throughout the year and without any explanation.  *Id.* at ¶¶ 21-22.  Moreover, Showell alleges that, from then on, Principal Johnson gave him a series of negative evaluations, repeatedly insulted him and subjected him to intimidation practices.  *Id.* at ¶¶ 19-20.  It appears that sometime during the Fall of 2007, Showell first contacted Ashe to complain about possible contract violations, but he indicates that Ashe ignored his complaint.  *Id.*  Showell goes on to state that he emailed the Professional Development Coach on October 19, 2007 to request that his changes in class

---

[1] Although not stated in the Complaint, this acronym appears to stand for Wicomico Alternative Learning Center located in Salisbury, Maryland.

3

assignment stop. *Id.* at ¶ 22. According to him, his last assignment change occurred during the month of January 2008. *Id.* At that time, his schedule included three classes, one of which is referred to as the "Class from Hell" because it contained thirteen "uncontrollable" students. *Id.* at ¶ 23. Showell mentions that this class was created at the specific request of Principal Johnson and that he received a satisfactory rating for his work in that class. *Id.* at ¶¶ 23-24.

In the Spring of 2008, during the Maryland State Assessment Testing Day, an incident involving Showell, Principal Johnson and another teacher occurred, which caused Showell to grow increasingly dissatisfied with Principal Johnson's behavior. *Id.* at ¶¶ 25-26. Showell then alleges that, in March of 2008, due to Principal Johnson's intimidation practices, "lack of professionalism" and Ashe's refusal to intervene, Showell contacted Defendant Moses to request a transfer. *Id.* at ¶ 27. He indicates that at that time, Moses advised him that he was added to the late transfer list. *Id.* Showell then alleges that he made repeated inquiries as to the status of his request and, having received no answer, he verbally requested a transfer during his final evaluation interview with Principal Johnson and Ashe. *Id.* at ¶¶ 28-29. Showell also alleges that Ashe denied his request and informed him that, regardless of tenure, it was too late to transfer. *Id.* However, Showell affirms that while his request was denied, the transfer requests of a number of Caucasian teachers who were also displeased with the work environment created by Principal Johnson were granted despite the fact that they were not on the transfer list. *Id.* at ¶¶ 31-34. Specifically, Showell contends that although Kevin Johnson, the same teacher who was assigned to a position promised to Showell earlier that year, was not on the transfer list, he was transferred to the Bennett High School. *Id.* at ¶ 31.

At the beginning of the 2008-2009 academic year, it appears that Showell was assigned to a co-teaching position with three other teachers. *Id.* at ¶ 36. Again, Showell states that he did

not receive any training for this position. *Id.* at ¶ 37. Showell further alleges that while Principal Johnson "excessively visited [his] classroom" and "never indicated that there were any concerns," all of Showell's evaluations from November 2008 to January 2009 contained a "Needs Improvement rating." *Id* at ¶¶ 40-41. Showell contends that Principal Johnson observed him more than his peers without providing any constructive feedback and that he even insulted Showell during a post-observation conference. *Id.* at ¶¶ 42-45. Following this incident, on November 11, 2008, Showell indicates that he contacted Defendant Moses to request another transfer and also contacted Defendant Ashe at that time. *Id.* at ¶ 46. Ashe informed him that he was on probation due to missing credits and that he would not be eligible for a transfer. *Id.* According to Showell, it was Moses who then informed Principal Johnson that he was not tenured. *Id.* at ¶ 47. Upon learning this information, Showell alleges that Principal Johnson called him to his office but did not permit him to explain his situation. *Id.*

On November 18, 2008, Showell alleges that he was observed in his classroom by Ashe but that during the observation, she was asked into the hallway by Principal Johnson. *Id.* at ¶ 49. Showell explains that because he felt that Principal Johnson sought to interfere with the evaluation process, he asked to see a copy of his evaluation. *Id.* at ¶ 49. At first, he alleges that Principal Johnson refused to let him see it, but then Showell claims that although Ashe claimed not to have been influenced by Principal Johnson, he noticed that both evaluations were identical. *Id.* at ¶¶ 49-51. It then appears that Showell contacted the Uniserv[2] Director, Virginia Riggs,[3] and the Secondary Education Supervisor, Kim Miles[4] to request removal from the BMS.

---

[2] The Complaint and subsequent pleadings are unclear about the nature of Uniserv and its role.

[3] Later in the Complaint, it appears that Virginia Riggs became Showell's representative during certain meetings with members of the Board.

[4] References to a Kimberly Myles appear later in the Complaint and appear to refer to the same person despite the different spelling of the name.

*Id.* at ¶¶ 52-53.   The Complaint also alleges that on December 18, 2008, Showell attended a doctor's visit to discuss chest pains he believed were linked to the stressful workplace environment created by Principal Johnson and his intimidation practices. *Id.* at ¶ 54.

On January 16, 2009, after a post observation conference with Principal Johnson and a Mr. Greene, Showell alleges that he was removed from his class and sent home on leave with pay by Defendant Moses. *Id.* at ¶¶ 57-59.   He further contends that he did not receive any verbal or written explanation for this removal, but states, that during the conference, Principal Johnson appeared angry when Showell mentioned a testing violation by another teacher which could have negative effects on the principal's position. *Id.*   Showell then indicates that, on the same day, he brought a letter to the Superintendent concerning this incident. *Id.* at ¶ 60.   However, Showell alleges that his input on the situation was not heard until January 26, 2009 during a meeting with himself, Defendant Moses, a certain Bill Cain and Virginia Riggs. *Id.* at ¶ 61.   Showell contends that Defendant Moses and Mr. Cain's behavior indicated that they had no interest in listening to him. *Id.* Moreover, Showell alleges that they refused to show him the statements of the four individuals which they alleged had made claims against him. *Id.* at ¶ 62.   Showell further contends that he was never advised of the reasons for his suspension and that it was not until January 28, 2009, that he received a written document informing him that he was on leave with pay and being reassigned to the Wicomico High School. *Id.* at ¶¶ 63-64.   On that same day, Showell states that he attended his first consultation with a "counselor/therapist," per the recommendation of his doctor, to discuss the emotional trauma suffered as a result of his treatment at the BMS. *Id.* at ¶ 65.

Subsequently, Showell claims that his rapid removal based on the request of a "group of Caucasian officials" after his repeated and ignored requests to transfer caused him to file a claim

for racial discrimination, harassment and retaliation with the Equal Employment Opportunity Commission ("EEOC") on January 29, 2009. *Id.* at ¶ 66. He then indicates that, on January 31, 2009, he informed the Superintendent, the President of the Board and the BMS Vice Principal of his EEOC claim and his concerns that he was the victim of racial discrimination in a non-tenure year. *Id.* at ¶ 67. Showell further alleges that soon after Moses and Mr. Cain delivered a letter informing him that he had been found guilty of misconduct and would be suspended for three days without pay. *Id.* at ¶ 68. On February 11, 2009, Showell contends that a discovery request was sent to Moses by his attorney Kristy Andersen, requesting emails, observations notes, investigation results and other related documents. *Id.* at ¶ 69. This discovery request was allegedly partially met as Showell only received his termination letter as well as the four statements against him mentioned during the January 26, 2009 meeting. *Id.*

On February 28, 2009, Showell alleges that although he was transferred to a new school, he was further evaluated by Principal Johnson and Defendant Ashe. *Id.* at ¶ 71. Moreover, he claims that on March 4, 2009, he received a letter from Defendant Moses pressuring him to resign. *Id.* at ¶ 72. He also states that on the day prior to the Appeals Hearing concerning his three day suspension, he received another intimidation letter from the Superintendent alleging that he was involved in "disturbances" at the BMS. *Id.* at ¶ 73. Additionally, Plaintiff alleges that he was not afforded due process during the hearing of March 24, 2009,[5] and that evidence in his favor was not heard, such as a Perception Survey concerning Principal Johnson and the testimony of an individual named Fulton Jeffers. *Id.* at ¶ 74. Showell contends that no one in the hearing addressed his claims of disparate treatment, racial discrimination and abrupt changes

---

[5] Although the Complaint references March 24, 2010, the chronology of events indicates that the year in question is in fact 2009.

in evaluations.  *Id.*  Moreover, he claims that the suspension was upheld despite the fact that no evidence of physical or verbal threats were presented against him.  *Id.* at ¶ 75.

Showell then alleges that the intimidation did not stop there and that on March 27, 2009, Defendant Ashe scheduled a meeting between him, the Principal of his new school, Mr. Hughes, and Kimberly Myles[6] to discuss a "Growth Plan."  *Id.* at ¶¶ 76-77.  However, Showell contends that, following this meeting, he received favorable evaluations from Mr. Hughes and Ashe on March 31, 2009 and April 11, 2009, respectively.  *Id.* at ¶ 78.

On April 23, 2009, after receiving a letter from his doctor diagnosing him with Depression and Displacement Anxiety Disorder allegedly resulting from the events at the BMS, Showell alleges that he amended his EEOC claim.  *Id.* at ¶¶ 79-80.  Almost immediately thereafter, on April 27, 2009, Showell contends that he was called into Principal Hughes' office to meet with Ms. Ashe, Ms. Moses, Mr. Cain and Ms. Myles and that he was informed that he would be suspended for the rest of the year with pay.  *Id.* at ¶ 81.  Again, Showell claims that the reasons for this suspension were never disclosed.  *Id.*  Showell also claims that the Uniserv Director and his Wicomico County Board Appeal's attorney[7] described the County's actions has "extremely harsh for someone with no infractions and with [his] teaching history."  *Id.* at ¶ 82. Showell then contends that he was terminated on May 12, 2009.  *Id.* at ¶ 85.  He also states that the Board of Education's Human Resources Department was instructed not to cooperate with him.  *Id.* at ¶ 86.  He further claims that his inability to obtain gainful employment close to home indicates that the Board must have tarnished his reputation.  *Id.* at ¶ 87.  Additionally, he states that in a last effort to intimidate him, the Superintendent sent him a letter approximately five

---

[6] *See supra* note 3.

[7] Based on the Complaint, it appears that Showell is most likely referring to both Ms. Virginia Riggs and Ms. Kristy Andersen.

months after his termination to inform him that he could no longer be on school grounds. *Id.* at ¶ 88.

Plaintiff filed this racial discrimination action on December 10, 2010 and alleges that he suffered "emotional distress, mental anguish, humiliation, embarrassment, damage to his professional profile, unnecessarily increased daily emotional, physical and social separation from his family. *Id.* at p. 30. He seeks *inter alia* a declaratory judgment against the Defendants, reinstatement with full tenure status, $750,000 for emotional distress, $100,000 for all other counts as well as punitive damages. *Id.*

Pending before this Court are Defendant the Board of Education and the Individually-Named Defendants' Motions to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (ECF Nos. 9 & 13). Also pending before this Court are Plaintiff's Motions for Extension of Time (ECF Nos. 15 & 17). Additionally, Plaintiff filed Motions to (1) Stay Defendants' Motions to Dismiss, (2) Appoint Counsel and (3) for an Extension of Time to Secure *Pro Bono* Counsel and Obtain Monetary Resources for Legal Representation (ECF No. 16).

<u>STANDARDS OF REVIEW</u>

I.      **Motion to Dismiss Pursuant to Rule 12(b)(1)**

A motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). A plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). In determining whether jurisdiction exists, the district court "is to regard the pleadings'

allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768–769 (4th Cir. 1991). Motions to dismiss for lack of subject matter jurisdiction are appropriate where a claim fails to assert facts upon which jurisdiction may be based. *See Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996). Where a plaintiff has failed to exhaust administrative remedies before bringing a claim, the action should be dismissed under Rule 12(b)(1). *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd* 85 Fed. Appx. 960 (4th Cir. 2004).

While there is some authority for the proposition that the nature of Defendants' challenge is based upon the merits, the United States Court of Appeals for the Fourth Circuit has held that the determination as to whether a defendant is an "employer" under Title VII is properly considered under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Woodard v. Virginia Bd. of Bar Examiners,* 598 F.2d 1345 (4th Cir. 1979). Thus, the Court must weigh the evidence and make a determination as to the Court's subject matter jurisdiction over this matter. *See Oram v. Dalton,* 927 F. Supp. 180, 184 (E.D. Va. 1996).

## II.     Motion to Dismiss Pursuant to Rule 12(b)(6)

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir.

2006) (internal quotation marks and alterations omitted) (quoting *Edwards*, 178 F.3d at 243). This Court "need not accept the legal conclusions drawn from the facts, and [this Court] need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet v. Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (internal quotation marks and citation omitted).

To survive a Rule 12(b)(6) motion, a complaint must give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v Pardus*, 551 U.S. 89, 93 (2007). While a *pro se* litigant's pleadings are "to be liberally construed," *id.* at 94, the facts alleged must "raise a right to relief above the speculative level," and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). This plausibility standard does not equate a probability requirement, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009). Moreover, the Supreme Court has explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Id.* Therefore, where the motion to dismiss involves "a civil rights complaint, we must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged. *Edwards*, 178 F.3d at 244 (internal quotation and citation omitted). Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.* at 1950.

<u>ANALYSIS</u>

**I.      Plaintiff's Title VII Claims (Counts I to III and XV)**

Defendant the Board of Education argues that Plaintiff's discriminatory discharge and retaliation claims under Title VII must be dismissed for failure to state a claim. The Individually-Named Defendants also argue for dismissal of these claims because they cannot be liable in their individual capacities under Title VII.

Title VII of the Civil Rights Act of 1964, provides that "it shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In his twenty-two-count Complaint, Showell has alleged that he was unlawfully terminated from his employment on the basis of his race and in retaliation for his complaint of racial discrimination.

In a Title VII case such as this, where the record contains no direct evidence of discrimination or retaliation, Plaintiff's claims must be analyzed under the burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973). *See Hawkins v. Pepsico, Inc.,* 203 F.3d 274, 281 n. 1 (4th Cir. 2000) (noting that the "*McDonnell Douglas* framework applicable to claims of race discrimination applies to retaliation claims as well) (citing *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1228 (4th Cir. 1998)). Under this framework, the plaintiff must first make out a *prima facie* case of discrimination and retaliation. If a *prima facie* case is established, the burden of production shifts to the defendant to offer a legitimate, non-discriminatory reason for its adverse employment action. *See O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311 (1996). If the employer fulfills this

reciprocal duty, the burden reverts back to the plaintiff to establish that the defendant's proffered reason is pretextual and that his termination was instead racially motivated.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08 (1993).

a.  <u>Discriminatory Discharge Claim</u>

In Counts I and XV, Showell contends that he was terminated on the basis of his race.  To establish a *prima facie* case of discriminatory discharge under Title VII, he must show that: (1) he is a member of a protected class; (2) he suffered an adverse employment action (such as a discharge); (3) he was at the time performing his job duties at a level that met his employer's legitimate expectations; and (4) the position remained open or was filled by a similarly qualified applicant outside the protected class.  *See Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011); *see also Baquir v. Principi*, 434 F.3d 733, 742 (4th Cir. 2006).  In reviewing the facts in the light most favorable to the Plaintiff, *Edwards*, 178 F.3d at 244, this Court finds that the first two elements of Showell's discriminatory discharge claim are met.  However, he fails to establish the third and fourth elements.  First, in order to be employed in the Maryland Public School system, a teacher must be certified or eligible for certification.  Md. Code Ann., Educ., § 6-101.  Because Showell concedes in his Complaint that in the Fall of 2008 and upon being terminated he was not certified, his Complaint does not satisfy the third factor of a discriminatory discharge claim.  *See* Pl.'s Compl. ¶¶ 47, 119, ECF No. 1 ("Plaintiff tried to explain where he was in regaining his certification . . . Mr. Showell would have been fully tenured had he not been terminated.").  Second, Showell's Complaint does not contain any allegations which would allow it to satisfy the fourth factor.  Therefore, Showell does not meet the *prima facie* requirements for a discriminatory discharge claim under Title VII and Counts I and XV against the Board of Education are DISMISSED WITHOUT PREJUDICE.

b. Retaliation Claim

In Counts II and III, Plaintiff alleges that he was retaliated against for reporting Principal Johnson's professional misconduct and intimidation practices as well as for requesting a number of transfers.  Showell also alleges that he was suspended without pay after filing an EEOC claim and sending notice of it to the Superintendent, as well as the Board of Education's President and Vice President via email.  Additionally, he contends that after being involuntarily transferred to a different school, he was subjected to further retaliatory actions through consistent harassment from members of the Board and a mid-year evaluation conducted by Principal Johnson and Defendant Ashe.

In order to establish a *prima facie* case of retaliation, Showell must show (1) that he engaged in a protected activity, (2) that his employer took a "materially" adverse action against him and (3) that a causal connection existed between the activity and the adverse action.  *Cepada v. Bd. of Educ. of Baltimore Cnty.*, WDQ-10-0537, 2011 WL 1636405, at *9 (D. Md. Apr. 28, 2011) (*citing Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F. 3d 536, 543 (4th Cir. 2003)).  An employee "engages in a protected activity if he opposes an unlawful employment practice."  *Cepada*, 2011 WL 1636405, at *9.  In this case, Showell claims that he was reporting professional misconduct, that he was targeted by Principal Johnson on account of his race and that he filed an EEOC claim.  Showell has therefore shown that he was engaging in a protected activity and thereby satisfies the first element of a retaliation claim.  While the Board of Education is correct that requesting transfers is not equivalent to engaging in a protected activity, Showell repeatedly alleges that those transfer requests were made as he reported Principal Johnson's conduct.

Pursuant to the Supreme Court's opinion in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), the second element is satisfied where the employer's action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Materially adverse actions do not include "trivial harms . . . petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* However, they include employer actions "likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Id.* (*quoting Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997). Here, the only action taken against Showell that meets this element is his suspension without pay which occurred after he filed his EEOC Complaint. The denial of transfer requests and the performance of professional evaluations simply do not rise to the level of materially adverse actions which would deter a reasonable worker from making or supporting a charge of discrimination. The Fourth Circuit further has explained that, "[t]he mere fact that a new job assignment is less appealing to the employee . . . does not constitute adverse employment action." *James v. Booz-Allen & Hamilton, Inc.,* 368 F.3d 371, 375 (4th Cir. 2004) (citing *Von Gunten v. Maryland*, 243 F.3d 858, 868 (4th Cir. 2001). Thus, "absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action." *Id.* at 376 (quoting *Boone v. Goldin,* 178 F.3d 253, 256-57 (4th Cir. 1999). Thus, the fact that Showell was involuntarily transferred to Wicomico High School does not satisfy the materially adverse employment action element of a retaliation claim.

As far as the third element is concerned, the Board of Education argues that Showell's Complaint "fails to allege that there was a causal connection between the suspension and Plaintiff's notification to Board members and employees that he has filed a claim with the"

EEOC.  Mem. 14, ECF No. 9-1.  This Court has held that an inference of a causal connection exists where the adverse action occurs "shortly after learning of the protect activity."  *Cepada*, 2011 WL 1636405, at *9 (*citing Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)).  In this case, Showell alleges that it was after he filed an EEOC claim and notified the Superintendent that he was suspended for three days without pay.  However, his Complaint seems to contradict that fact.  Indeed, he alleges that on or after January 26, 2009, an investigation was being conducted with respect to a post-observation conference which took place on January 16, 2009. He then states that he was put on leave with pay until January 28, 2009 and asked to report to the Wicomico High School on January 29, 2009 for a new assignment.  Showell also claims that on or after February2, 2009, he was informed that "he had been found guilty of misconduct" and that as a result, he would be placed on leave.  Pl.'s Compl. ¶ 68.  From the alleged facts in the Complaint, it is apparent that Showell's three day suspension, while received shortly after he filed his EEOC claim, seems more directly related to the investigation into his lack of certification and his poor performance evaluations.  The Complaint does not satisfy the third element of a retaliation claim.  Therefore, Showell does not meet the *prima facie* requirements for a retaliation claim under Title VII and Counts II and III against the Board of Education are DISMISSED WITHOUT PREJUDICE.

### c.  Title VII Claim Against Individuals

Furthermore, it is well-established that "supervisors are not liable in their individual capacities for Title VII violations."  *Lissau v. Southern Food Servs, Inc.*, 159 F.3d 177, 180 (4th Cir. 1998).  In *Lissau,* the Fourth Circuit held that only an employer may be held liable for Title VII violations, and that individual liability under the Act "would improperly expand the remedial scheme crafted by Congress."  *Id.* at 181.  Therefore, Defendants Fredericksen, Moses, Johnson

and Ashe are not individually liable for the alleged Title VII violations.  Plaintiff's claims in Counts I to III and XV against the Individually-Named Defendants are thereby DISMISSED WITH PREJUDICE.

**II.     Plaintiff's 42 U.S.C. § 1981 Claims (Counts IV to XI and Counts XVI to XX)**

The Board of Education and the Individually-Named Defendants, as agents of the Board, argue that they are entitled to Eleventh Amendment immunity with regard to Plaintiff's 42 U.S.C. § 1981 claims contained in Counts IV to XI and Counts XVI to XX and that the Courts and Judicial Proceedings § 5-518(c) of the Maryland Code does not waive that immunity.  The Individually-Named Defendants further argue that they cannot be liable in their individual capacity under 42 U.S.C. § 1981 and that even if they were individually liable, Showell fails to state claims of retaliation, discrimination, hostile work environment, constructive discharge, refusal to transfer and failure to promote against them.

a.   Eleventh Amendment Immunity

This Court has held that Maryland county boards of education are state agencies "insulated from most lawsuits under the doctrine of sovereign immunity." *Williams v. Wicomico Cnty. Bd. of Educ.*, WMN-10-3582, 2011 WL 3022300, at *6 (D. Md. July 21, 2011) (*citing Lewis v. Bd. of Educ. of Talbot Cnty.*, 262 F. Supp. 2d 608, 612 (D. Md. 2003).  Where a state has not waived its sovereign immunity and consented to suit, actions against state agencies must fail.  *Id.*  Moreover, private suits against non-consenting states and state agencies in federal court are barred by the Eleventh Amendment.  *Gray v. Laws*, 51 F.3d 426, 430-31 (4th Cir. 1995).  To waive Eleventh Amendment immunity, the state statute must "specify the State's intention to subject itself to suit in federal court." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985).  In Maryland, Section 5-518(c) of the Maryland Code on Courts and Judicial Proceedings

states that a "county board of education may not raise the defense of sovereign immunity to any claim of $100,000 or less."  While Defendants argue that this statute does not constitute a waiver of Eleventh Amendment immunity for private suits against the Board of Education, the Maryland Court of Appeals and this Court have held that § 5-518(c) of the Maryland Code waives a board of education's sovereign immunity, and consequently its Eleventh Amendment immunity, for claims of $100,000 or less.  *Williams*, 2011 WL 3022300, at *7; *Cepada*, 2011 WL 1636405, at *4; *Lee-Thomas v. Bd. of Educ. of Prince George's Cnty.*, CBD-08-3327, 2010 WL 2365673, at *3 (D. Md. June 8, 2010); *Bd. of Educ. of Baltimore Cnty. v. Zimmer-Rubert*, 409 Md. 200, 217 (Md. 2009).  However, *Lee-Thomas* is on appeal before the Fourth Circuit and oral arguments were heard concerning this specific issue on September 20, 2011.  However, this Court need not address this issue as, even assuming that Eleventh Amendment immunity does not apply in this case, the Plaintiff's claims fail for the reasons discussed *infra.*

      b.  <u>Section 1981 Claims Against the Individually-Named Defendants</u>

Section 1981(a) provides that: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."  This statute may serve as a basis to assert an employment discrimination claim based upon failure to hire.  *See Stock v. Universal Foods Corp.*, 817 F. Supp. 1300, 1305 (D. Md. 1993).  However, it is clear that "when suit is brought against a state actor, § 1983 is the 'exclusive federal remedy for violation of the rights guaranteed in § 1981.' " *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)).  In determining whether a defendant is a "state actor," courts inquire into "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the

State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974).  As discussed above, Fredericksen is the Superintendent of Schools, Stephanie Moses is the Board's Director of Human Resources, Anne Ashe is the Board's Supervisor of Mathematics, and Johnson is the Principal of the Bennett Middle School.  The facts alleged in the Complaint indicate that these Defendants were employed by the Board of Education and acting in their official capacity in their dealings with Showell.  Therefore, this Court finds that Fredericksen, Moses, Ashe and Johnson are state actors, and as such, they are not susceptible to suit under § 1981 in either their official or individual capacity.  *See Victors v. Kronmiller*, 553 F.Supp.2d 533, 543 (D. Md. 2008) (stating that Section 1983 is the exclusive federal remedy for the violation of rights guaranteed by Section 1981 and that state actors are not amenable to suit under Section 1981 in either their official or individual capacities).  Thus, Showell's claims alleging violations of 42 U.S.C. § 1981 by the Individually-Named Defendants in their official and individual capacity are DISMISSED WITH PREJUDICE.

    c.  <u>Section 1981 Claims Against the Board of Education</u>

As the Board of Education cannot assert its Eleventh Amendment immunity, this Court must determine whether the Section 1981 claims against it are properly alleged.  Employment discrimination claims brought under 42 U.S.C. § 1981 have the same elements as Title VII claims.  *Causey v. Balog*, 162 F.3d 795, 804 (4th Cir. 1998) (citing *Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985)).

    *i.  Retaliation (Counts IV, VIII to XI and XIX)*

This Court reviews Counts IV, VIII to XI and XIX concurrently, to determine whether they satisfy the *prima facie* requirements of a retaliation claim and reviews the facts in the light most favorable to the Plaintiff.  As stated above, in order to establish a *prima facie* case of

retaliation, Showell must show (1) that he engaged in a protected activity, (2) that his employer took a "materially" adverse action against him and (3) that a causal connection existed between the activity and the adverse action. *Cepada*, 2011 WL 1636405, at *9 (*citing Burlington*, 548 U.S. at 68; *Bryant*, 333 F.3d at 543). While this Court can conclude that Showell engaged in a protected activity as he repeatedly reported his belief that he was retaliated against on the basis of race, the Complaint does not allow this Court to find that the second and third elements are met. Under the plausibility standard established in *Ashcroft v. Iqbal*, there must be "more than a sheer possibility that a defendant has acted unlawfully." 556 U.S. 662, __, 129 S. Ct. 1937, 1949 (2009). Additionally, the Supreme Court has held that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Id.* The Plaintiff asks this Court to infer too much from his conclusory statements. Moreover, the facts expressed in the Complaint more conclusively support the position that the Board suspended and then later terminated Showell because of his poor performance evaluations and his failure to meet the suspension requirement. Therefore, Showell fails to state a *prima facie* case of retaliation under 42 U.S.C. § 1981 against the Board. Counts IV, VIII and XIX are DISMISSED and the retaliation claims in Counts X, XI and XIX are DISMISSED WITHOUT PREJUDICE.

### ii. Discrimination (Counts V, XVII and XX)

In Counts V, XVII and XX, Showell claims that he was discriminated against on the basis of race in violation of 42 U.S.C. § 1981. In order to set forth a prima facie case of race discrimination, a Showell must show that: (1) he is a member of a protected class; (2) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; (3) he suffered an adverse employment action; and (4) similarly

situated employees outside of his protected class received more favorable treatment. *See White v. BFI Waste Services, LLC,* 375 F.3d 288, 295 (4th Cir. 2004).   Again this Court reviews these counts concurrently to determine whether Showell states a claim on which relief can be granted. While Showell alleges in these counts that he is a member of the protected class, that he was terminated and that similarly situated Caucasian employees received a more favorable treatment, his complaint fails to state that he met the employer's legitimate expectations at the time of the adverse employment action.   In fact, as stated above, Showell even admits that he did not meet the certification requirement imposed by the Maryland Code and the Board of Education.[8] Moreover, most of his allegations in these counts are conclusory.   Thus, Showell does not successfully establish a *prima facie* claim of discrimination under 42 U.S.C. § 1981.   Therefore, Counts V and XX are DISMISSED and the discrimination claim in Count VII is DISMISSED WITHOUT PREJUDICE.

### iii.  Hostile Work Environment (Counts VI and XVI)

In Counts VI and XVI, Showell alleges that he was the victim of a hostile work environment.   To establish a hostile work environment claim, Showell must prove: (1) unwelcome conduct; (2) based on his race; (3) sufficiently severe or pervasive to alter the conditions of employment thereby creating a hostile work environment; and (4) some basis for imputing liability to the employer.  *Royal v. Potter*, 416 F.Supp.2d 442, 446 (4th Cir. 2006).

The fact that Showell repeatedly complained about Principal Johnson's conduct is enough to indicate that the conduct was unwelcome.  *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 314 (4th Cir. 2008) ("Because Ingram indicated to both management and his coworkers that he found the religiously demeaning conduct to be offensive, the EEOC has sufficiently alleged that [the] harassment was unwelcome.").  Moreover, because a hostile work

---

[8] *See supra* at 13.

environment may be imputed to the employer if it knew of the offending conduct but did not "respond with remedial action," this Court finds that the fourth element of a hostile work environment claim is also satisfied.  *Id.* at 319.

To satisfy the second element, Showell must establish that "but for" his race, he "would not have been the victim of the alleged discrimination."  *Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 142 (4th Cir. 2007).   Although Showell states in other Counts that similarly situated Caucasian employees received transfers and were not as frequently evaluated, nowhere in Counts VI and XVI does he meet the burden imposed by this element.  Moreover, in the Complaint, Showell alleges that he was not the only person dissatisfied with Principal Johnson's conduct thereby indicating the Principal Johnson treated a number of individuals in a similar fashion.  Pl.'s Compl. ¶¶ 31-33.

In determining whether an environment is "hostile" or "abusive," courts assess the totality of the circumstances and they may take heed of "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993).  "The plaintiff must show more than simple teasing, offhand remarks, and isolated incidents (unless "extremely serious").   *Cepada*, 2011 WL1636405, at *5.  In Count VI, Showell alleges that he was subject to "intimidation" and "threats."  In Count XVI, he contends that he was "harassed on multiple teaching assignments." From the rest of the Complaint, the Court also infers that Showell contends that the repeated evaluations interfered with his work and that Principal Johnson repeatedly intimidated him. However, Showell does not provide concrete examples of the intimidation practices he suffered and only makes conclusory statements as to the hostile and abusive conduct he was confronted

to.  Under the *Iqbal/Twombly* standard, his allegations are not sufficient to establish the third element of a hostile work environment claim.  As a result, Showell fails to state a claim of hostile work environment under 42 U.S.C. § 1981.   Thus Counts VI and XVI are DISMISSED WITHOUT PREJUDICE.

### iv.  Constructive Discharge (Counts VII, XI and XVIII)

In Counts VII, XI and XVIII, Showell makes a claim of constructive discharge.  A plaintiff may establish constructive discharge by showing that his employer "deliberately made [his] working conditions intolerable in an effort to induce [him] to quit."  *Heiko v. Colombo Savings Bank, F.S.B.,* 434 F.3d 249, 262 (4th Cir. 2006) (quoting *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 272 (4th Cir. 2001) (internal quotation marks omitted)).  Therefore, Showell must show that (1) his employer's actions were intentional; and (2) a reasonable person would find the resulting work conditions intolerable.  *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186-87 (4th Cir. 2004); *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 244 (4th Cir. 1997).  "However, mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign."  *Heiko*, 434 F.3d at 262 (quoting *James*, 368 F.3d at 378 (internal quotation marks and alterations omitted)).  Again, here the Plaintiff makes threadbare allegations which are not sufficient to satisfy the elements of a constructive discharge claim.  Apart from mentioning that he received "correspondence suggesting his resignation," Showell does not sufficiently allege that the Board or members of the Board acted intentionally to force him to resign, nor did he demonstrate that a reasonable person under similar conditions would resign.  Therefore, Plaintiff cannot rely on a constructive discharge claim and the constructive

discharge claims in Counts VII and XI are DISMISSED WITHOUT PREJUDICE and Counts VII, XI and XVIII against the Board of Education are DISMISSED WITHOUT PREJUDICE.

### v.   Failure to Promote and Refusal to Transfer (Counts X, XVII and XIX)

In Count XIX, Showell makes a failure to promote claim and in Counts X and XVII, he alleges that he was denied the opportunity to transfer on the basis of his race.   In order to establish a *prima facie* case that a plaintiff was denied a promotion or a transfer because of race, he or she must prove that: "(1) he is a member of a protected group; (2) the defendant had an open position for which the plaintiff applied or sought to apply; (3) he was qualified for the position; and (4) he was rejected under circumstances giving rise to an inference of discrimination."  *Janey v. N. Hess Sons, Inc.*, 268 F.Supp.2d 616, 624 (D. Md. 2003); *see also Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 846 (D. Md. 2004).   As Showell is African-American, he is a member of a protected group.  *Newport News shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 682 (1983); *Williams v. Staples*, *Inc.*, 372 F.3d 662, 668 (4th Cir. 2004). Nevertheless, he fails to establish the rest of the elements of the claim.  Although Showell alleges that he repeatedly applied for a transfer, the Complaint indicates, that he applied late.  Moreover, while he alleges that a number of Caucasian teachers were transferred when his transfer request was denied, he also admits that he did not have the proper certification and fails to indicate whether those teachers were transferred without certifications as well.   Most importantly, he concedes that in 2009, he did receive a positive response to his transfer request.   Although he states that the transfer to Wicomico High School was involuntary, he does not indicate in his Complaint that his salary or employment level were reduced.  Finally, even reviewing the facts in the light most favorable to the Plaintiff, this Court is unable to infer an inference of discrimination.  The facts more conclusively demonstrate that Showell applied late for a transfer

and that as soon as a position was available he was transferred. Additionally, the fact that he received numerous dissatisfactory evaluations and that he was not certified demonstrate that he was not qualified for the position. Consequently, Showell fails to establish a claim for failure to promote or transfer under 42 U.S.C. § 1981. The failure to promote claims in Counts X and XIX are DISMISSED WITHOUT PREJUDICE and Counts X, XVII and XIX against the Board are DISMISSED WITHOUT PREJUDICE.

### III. Plaintiff's State Law Claims (Counts XII to XIV and XXI to XXII)

Pursuant to 28 U.S.C. § 1367(c)(3), this Court has discretion to decline to exercise supplemental jurisdiction if the court "has dismissed all claims over which it has original jurisdiction." In *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966), the Supreme Court cautioned that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a superfooted reading of applicable law." Accordingly, because all federal claims have been dismissed with prejudice as to the Individually-Named Defendants and without prejudice as to the Board of Education, this Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims set forth in Counts XII to XIV and XXI to XXII of the Complaint. Plaintiff's remaining state law claims are therefore DISMISSED WITHOUT PREJUDICE. Consequently, the Board of Education's Motion to Dismiss (ECF No. 9) and the Individually-Named Defendants' Motion to Dismiss (ECF No. 13) are GRANTED.

### IV. Plaintiff's Other Motions

Also pending before this Court are Plaintiff's Motions for Extension of Time (ECF Nos. 15 & 17) and a Motion for Extension of Time to Secure *Pro Bono* Counsel and Obtain Monetary Resources for Legal Representation (ECF No. 16). These motions were in June of this year.

Given that over four months have elapsed since the filing of these motions, the Plaintiff has essentially been provided an extension of time to retain counsel and has failed to do so. Therefore, these motions are DENIED.

Additionally, Plaintiff filed a Motion to Stay Defendants' Motions to Dismiss (ECF No. 16). Rule 62 of the Federal Rules of Civil Procedure provides for motions to stay proceedings in the context of the enforcement of a judgment. In this case, a judgment had not been issued at the time of the filing of this motion. It was therefore improperly filed. Moreover, considering the fact that the Defendants' Motions to Dismiss are granted, the Motion to Stay proceedings is DENIED AS MOOT.

Finally, Plaintiff again moves this Court to appoint Counsel (ECF No. 16). On March 1, 2011, this Court issued an Order (ECF No. 4) denying Plaintiff's first Motion to Appoint Counsel (ECF No. 3). A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1)[9] is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. District Court*, 490 U.S. 296, 298 (1989). Where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed. *Id.*

Upon careful consideration of the motions and previous filings by Plaintiff, the Court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. The issues pending before the

---

[9] Under § 1915(e)(1), a court of the United States may request an attorney to represent any person unable to afford counsel.

Court are not unduly complicated and no hearing is necessary to the disposition of this case. Therefore, there are no exceptional circumstances that would warrant the appointment of an attorney to represent Plaintiff pursuant to 28 U.S.C. § 1915(e)(1).  Therefore, Plaintiff's Motion to Appoint Counsel (ECF No. 16) is DENIED.

CONCLUSION

For the reasons stated above, the Motion to Dismiss of the Board of Education (ECF No. 9) is GRANTED.  The Motion to Dismiss of the Individual Defendants, Fredericksen, Moses, Johnson and Ashe (ECF No. 13) is GRANTED.  Plaintiff's federal claims against the Board of Education are DISMISSED WITHOUT PREJUDICE.  Plaintiff's federal claims against Fredericksen, Moses, Johnson and Ashe's are DISMISSED WITH PREJUDICE.

Plaintiff's Motions for Extension of Time (ECF Nos. 15 & 17) are DENIED.  Plaintiff's Motion to (1) Stay Defendants' Motions to Dismiss, (2) Appoint Counsel and (3) for an Extension of Time to Secure *Pro Bono* Counsel and Obtain Monetary Resources for Legal Representation (ECF No. 16) is DENIED.

A separate Order follows.

Dated:          November 22, 2011                  /s/_____
                                                   Richard D. Bennett
                                                   United States District Judge